Good morning, everybody. Judge Tallman and Judge Gould and I would like to welcome you all to the Ninth Circuit. We're glad to have everyone here today, and we've got two cases set for argument. Just remember, if you want to reserve time, let us know and try and watch as you wrap up as time's expiring so that we can keep within the time. We'll go ahead and call the first case, which is Cuevas v. City of Tulare, case number 23-15953. Good morning, Your Honors. Michael Haddad for the Plaintiff, Rose Cuevas, and I'd like to reserve five minutes for rebuttal, please. Brentland v. California clearly established that during a traffic stop, an officer seizes everyone in the vehicle, not just the driver. And long before this incident, it was clearly established that subjective intent had nothing to do with determining the seizure of a person. Not the officers, not the person seized. However, the district court, encouraged by the defendants, wrongly held that Rose Cuevas was never seized because these officers say they didn't intend to seize her. I thought the court decided that the seizure, if it occurred, occurred after he unleashed the canine. No, the court determined that she wasn't seized. So she was never seized. That's what the court said. Judge Tallman, I'm having trouble hearing Judge Tallman. Okay. Is that better? Yeah, if you can speak into the mic. I just moved it. Okay. Thank you, Judge Gould. So, even if the district court erred on that point, and you might, we'll hear from opposing counsel, but you may be right about that, that doesn't get you all the way through to the end zone, right? You still have to win on the qualified immunity issue. Yes. Can you address that a little bit? Yes. So first, once we understand that Ms. Cuevas was seized, then clearly the Fourth Amendment applies to any force to which they subjected her, set in motion or subjected her. Here, it was 34 gunshots, many of which struck her. Can you be clear about many of which? I thought it was two. Is that correct? Or was it more than that? Or do we know a number? It's impossible to say how many because there's some wounds that appear to be pass-through wounds. She was wounded in her left arm, her chest, and her brain stem. So what would you have the officers do after the driver shoots and kills the canine and then shoots the dog's handler twice? I would have the officers follow the law and their training. Number one, the law says... Well, their training is to meet deadly force with deadly force, is it not? That's part of the training, but the training is when there's innocent bystanders next to your target, you can't shoot without taking due precautions for the safety of the innocent bystanders. So you would have the officers hold fire, what, until they could reposition themselves while he's continuing to fire at them, the driver? First of all, he wasn't continuing to fire. He fired two shots, and it's undisputed according to the officers. Well, he fired more shots later, did he not? It was after they finished their barrage of 34. I guess what I'm asking you is, once he starts the gunfight, is it your position that the officers cannot defend themselves until they move to a position which would immunize the passenger from being hit as a bystander? Basically, yes. They can defend themselves, but they have to do so within the bounds of the law and their training. Counsel, I think that if we issued an opinion that said that, we would look... It would be a very difficult opinion to write and be followed by officers in the field under circumstances which, if this isn't tense, uncertain, and rapidly evolving, I don't know what is. Counsel, I have a question after you answer Judge Tolman. Go ahead and answer my question, and then Judge Gould has her question. Thank you so much. So what they should have done is taken cover next to their cars for a few seconds, seen how this continued to evolve. He didn't fire any more shots at that time. But he's already hit one of their officers and killed the canine. I mean, what does the body count have to reach before they can return fire? Well, what body count do we allow the police to create of innocent people who are nearby? Well, unfortunately, sometimes bystanders get hit, but that doesn't necessarily convert it into a constitutional tort, counsel. What if the gunshot came from a crowded bus stop with lots of innocent people right there? Are you saying the police would be allowed to... That's the whole point, though, is that these are fact-intensive analyses, and that might be different. I mean, these decisions have to be made all the time, but you have to show that it's clearly established, and I don't know what you have. You've got the three cases. Boyd, as I look at it, Boyd seems to be your best case, but I don't find it to carry the weight, because there they threw a flash bomb, and there was a bystander was hit. We allowed that to go forward, but I guess Boyd sort of goes to your hypothetical of going into, and I apologize, Judge Gould, can I take a step back? Judge Gould had asked, and I totally forgot. Judge Gould, go ahead, and you ask your question, and then I'll start on. My question's a simple one. Is the record clear that the officer who shot at the car was aware of the passenger sitting there? One of them admits he heard the radio broadcast that there were three occupants. The other two say they can't recall if they heard it or not. The jury can find that they did hear it. In addition, the jury can find that Sergeant Garcia, when he broke the driver's window, was looking directly across, straight in, and must have seen the passenger. So I think that if you construe the facts in the light most favorable to the plaintiff, you have to assume that the officers knew that there were innocent passengers in the car. Okay, thank you, Counsel. There were two, is that right? Yes. Okay. The one in the back seat was hiding on the floor, and he was unhit. Okay. Now, to answer your question, Judge Nelson, we have Boyd versus Benton County, and I think, really, what that case says is when the police are going to deploy a significant level of force, and there it was merely intermediate force, not deadly force, even in response to a high threat, which, in that case, there was a high threat, that's why they had a SWAT team going in, and they have reason to believe there's innocent people nearby, they have to take due regard for the safety of the innocent people. Now, a similar case... ...as a result of the two gunshot wounds that he sustained. It was a dangerous situation. There's no question about it, Your Honor, but officers' lives are not worth more than bystanders' lives, and that's what the officers are trained... It's not a question of weighing whose life is worth more. It's a question of whether or not the law commands that an officer must refrain from using deadly force to protect himself or another from harm, and you've got an officer who's already down and can't reposition himself. He's standing out in the open, laying on the ground next to the driver's side of the car, after having been shot twice by the driver. Are you saying that the officers are not entitled to use deadly force to protect him, even though they may be in a position of relative safety? First, the officer who was shot was repositioning himself. He was already crawling out of the way to cover behind his car. And second, the officers are allowed to defend themselves, but only lawfully, and that means they're required to protect the safety of innocent bystanders. That's what their training says, too. This is not asking anything of unfair... Counsel, you may have a perfectly cognizable negligence action under state law, but I'm struggling to find where the constitutional tort here is. Let me add another case, and we didn't have this in our brief because I didn't find it until recently as I was getting ready. It's Richards v. Cox, 842 Fed Appendix 49. Judge Chalman was on this panel, but it was an Eighth Amendment prison case arising out of Nevada where prison officials allowed prison guards to shoot live shotgun rounds at the floor in the direction of fighting inmates and also innocent bystanders. And this court held there, it was obvious that you can't use live ammunition near innocent bystanders without taking any precaution for their safety. You don't think there's a difference between breaking up a prison disturbance where the only people armed are the correctional officers and a gunshot or gunfight in the field where both sides are firing at each other? I don't believe this scenario in this case, where one officer was wounded and crawling out of the way, gave the officers the right to indiscriminately shoot in the direction of innocent people. As I recall the facts of that prison case, it's more like our decision in the city of Davis case, is it not? Where the officers fired the pepper balls to break up a melee on the UC Davis campus? Well, it's a little different than that because they fired the balls to break up the melee to disperse the crowd and they hit an innocent person who wasn't doing anything negative. In Richards, they were presumably shooting, hoping to hit the fighters but didn't take any precautions to protect the bystanders who were on the ground as ordered. What precautions are you talking about? What precautions should they have taken here? Here, they should have taken cover behind their cars, waited a few seconds to reassess until they could get a clear target. That just has to be a non-starter. That cannot be clearly established that that's what they had to do. I mean, when shots are fired, do you have any case where shots were fired at an officer and the response is, you can't fire back? Of course not. And there was no case before the judge... You said, of course not. Yes. Isn't it a dispositive issue to hear whether you're... I don't have a case exactly like this because there's never been a scenario before where officers so recklessly fired live ammunition at innocent bystanders for any reason. Okay, but counsel, we're not asking for a case on all fours. That's clear. Right. All we're asking for is a case where someone has fired rounds at officers and they can't shoot back. I don't think such a case exists because I think such a rule would put our officers at huge risk. Officers' lives are not worth more than anybody else's life. You're not answering Judge Nelson's question. I share his concern. What I was going to ask you earlier but didn't get a chance to fully articulate was whether the law is clearly established that an officer who's got someone shooting at him and wounding him, other officers, is not allowed to shoot back. Yes. I believe Boyd v. Benton County is dispositive. I think it's clear. I think it's close. And it was a situation that was dangerous enough to require a SWAT team to go in. They were facing a high level of danger there. But counsel, it takes 45 minutes to an hour to get a SWAT team on the scene and plan for those kinds of raids. This circumstance didn't allow for that kind of pre-planning. The pre-planning should have given them even more warning that they were innocent people and then to take more precautions. Yes, you're right. And that's why they were found, that's why they were denied qualification. But that's why these officers were trained starting in the police academy about fundamental firearm safety rules. And they violated every one of those. And they were warned, you can't fire when you can't acquire a target. Our expert also says that... They had acquired the target. The problem is because she was in such close proximity as the passenger to the driver, she unfortunately was hit by stray fire. No, they never acquired the target. They admit or they say they couldn't see through the tinted windows. And actually we know... Well, they got the target. Excuse me? They hit the target and the window was broken. They also hit Ms. Cuevas. And they didn't hit the passenger in the backseat. So this idea that they were just shooting randomly... I mean, again, it goes to Judge Thomas, but you have potential negligence claims that you can pursue in state court, correct? Yes. Okay. And it was basically randomly. Do you want to reserve time for rebuttal? I will. Just one last point. It was randomly because, for example, the sergeant fired 18 shots and can only account for four of them. He can't justify 14 of his shots. That's essentially indiscriminate. You're asking us to write an opinion which in real life just doesn't make any sense. I mean, once you get into a gunfight, yeah, I realize they're trained to try and count the number of shots that they fired, but I think you're asking us to render a rule that would be superhuman and would be laughable if we issued a decision saying what you want us to say. I think it would be courageous and it would be the right thing to do, but I'll reserve the rest of my time. Thank you, Counsel. Counsel, when you're making your rebuttal, the issue that I think you need to focus on is whether the rule you want is not courageous, but rather whether it's required by clearly established precedent. Yes, Your Honor. Good morning, Your Honors, and may it please the Court, I'm Mr. Bruce Prate for the appellees. I don't know if I need to reserve a couple minutes, but... Well, no, because you don't get rebuttal. You don't need to use up all your time if that's what you're asking. I suspect I may not. Well, let me start with this. Do you agree that the District Court erred as far as the seizure? Do you agree that the District Court found there was no seizure of Ms. Cuevas? I do agree that the Court found there was no seizure, but I don't agree that the Court was wrong. Given the fact, undisputed facts, that Mr. Castro, the driver, the shooter, came to a stop because he swerved off the road and got stuck in the mud, he didn't submit to authority, which every case... Okay, but then the window's broken. Correct. The dog is thrown through the window. Right. Then shots are fired. I don't know at what point the seizure happens, but boy, I have a hard time with the idea that there's not a seizure at some point along that spectrum. Well, it's a very fine line, I would agree. At some point in time, obviously when the officers returned fire, it was tantamount to a seizure of Mr. Castro. Oh, but not of Cuevas? Well, and I think factually we need to understand that,  Officer Garcia, the canine handler, was wounded and out in the open, which is why officers returned fire. Their own expert, which we pointed out in the record, established that Mr. Castro, the shooter, fired at least two rounds that killed the police dog, two more rounds through the window that hit Officer Garcia in the chest and the wrist. Then he, Mr. Castro, crawled across the passenger side and fired two more rounds out the right front passenger side. Before officers fired again and finally stopped him? No, the officers fired during the course of all this. The officers fired... So he collapsed and died after, but not before. He got two more rounds off after he crawled out of the car. Correct. And as the Supreme Court pointed out in Plumoff v. Rickard, it was the driver who placed, in this case, Ms. Cuevas in danger by not only the pursuit, he could have ended that, but also by crawling across her path. The officers have no choice but to follow the train of the shooter who is initially shooting out the window then crawls across her, which they're returning fire to him, and unfortunately and tragically, she's in the path. Can I add? I don't know how much this matters in this case, but I was interested in the idea that they put the canine through the window. Is that standard procedure in these circumstances and was that driven because of the high-speed chase and this became a felony chase? Is that what justified it? Right. I can't say it's standard. I can't say it's not standard. Coincidentally, I was a police canine handler when I was an officer, and I can tell you I've done the same thing. The officer did direct his dog to Mr. Castro, the driver. Frankly, it's a moot point as to whether that had any effect on Ms. Cuevas because she was never bitten by the dog. She was never the subject of the dog. I'm probably expanding this beyond where we need to go, but it seems to me, and I don't think the officers did that here, but if the officers created the need for Castro to shoot and then that causes the gunfight, is it possible? I don't know what that would be. Police endangerment or something like that. I don't think that's what's been argued here, but that was the one thing I just wanted to clarify. And I think to the Court's point and Judge Tallman's point, whether that's negligence under State law, that that violated some police standard, I don't know, and we may have to look deep down the road. As a canine handler, don't you frequently send dogs into closed spaces that would otherwise endanger the officer if you sent a human in? That's exactly the point of the dog. That's why they have the dog. Sadly, unfortunately, they sometimes are injured or killed in doing that, but at least it's not a human that's injured. And in this case, unfortunately, the dog and the human were both shot. Right. So I just don't know how the Court creates a rule that tells police officers you can't defend yourself and other officers when you're being fired upon. And there clearly is no established case to that effect. And in fact, Flettys versus San Diego, which we cited at several points in our brief from this Court, was a circumstance where the driver in a pursuit came to rest not because of submission to authority, but because he hit a solid object, much like the plaintiff in this or the decedent in this case where he stopped in the roadway. Officers then fired upon him and, unfortunately, hit the passenger. And this Court said there was no seizure in that case because the driver did not submit to authority. At most, it was an attempted seizure, but until the individual submits to the authority, there is no seizure under, whether it's Lewis, whether it's Scott versus Harris, Brower, all the Supreme Court cases say the seizure only occurs when the individual submits to authority. At most, under the Fourth Amendment in Hoderi versus or California versus Hoderi, it's an attempted seizure at most until the individual submits to the authority, which did not occur in this case to answer Judge Nelson's question. I don't believe the seizure at the threshold issue even occurred. And then, clearly to Judge Gould and the rest of the Court's position, there is nowhere close to a clearly established case that would tell these officers beyond debate that the split-second decisions they were making while taking fire could somehow have violated some clearly established constitutional right under these specific facts or even anything close. And in fact, Fletties would suggest that the facts, the clearly established law was they could do exactly that, although in Fletties they weren't even taking fire. So, I don't know if the Court needs anything else, but Judge Gould, Judge Gould, do you have any questions? No, I have no other questions. Thank you. Okay. Thank you, Your Honor. Okay, thank you. All right. Thank you. Factually, all the officers said they could not see into the car while they were shooting, so the defendants claimed that they were adjusting their aim to account for the movement of the driver is baseless and there's no way the jury could find that. Now, in terms of clearly established law... But, there's no dispute in the record that he did crawl from the driver's position to the right rear passenger door in order to get out of the car. Yes, we don't know when and we know he did that after he was shot. It could have happened after the officers stopped shooting. And I assume the record doesn't conclusively establish when Ms. Cuevas was actually hit in the exchange of gunfire because it all happened so quickly. Ballistics aren't going to help you much under those circumstances. Right. Now, I think Boyd and Richards versus Cox clearly established the law... clearly established the law at least to the point set by the Supreme Court in Taylor versus Riojas recently where they said, quote, a general constitutional rule already identified in decisional law may apply with obvious clarity to the specific conduct in question. What was the constitutional violation in that Supreme Court case? That was an Eighth Amendment violation. So, the Supreme Court has said Fourth Amendment cases, you need more specificity just by nature of the claim. The Supreme Court has consistently said, has always said that an obvious case doesn't require a prior case and you don't need a previous case on offer. Right. So, well, we can get into obviousness. We had a recent decision in the Wade case from this court which said obviousness is very difficult and almost impossible in a Fourth Amendment case. How would you distinguish that? I would say that Wade is out of step with other cases from the Ninth Circuit. But we're bound by it, right? Well, we're also bound by the Aguirre case and there was another recent case. And that said it was obvious in a Fourth Amendment context? Yes. Yes. And there was a case last week that also found an obvious violation. Now, how could any reasonable officer believe even if a driver has fired shots out of the car that it's lawful to spray and pray many, many gunshots into a car they've seized and know contains innocent passengers with no regard for the safety of the passengers and in violation of their own training? And I would contend that's an obvious situation. At least it comes close enough to being governed by general constitutional rules, which I think get very close from the Boyd case and the Richards vs. Cox case. Thank you, Your Honors. Thank you so much. Thank you to both Council for your arguments in this case. The case is now submitted.
judges: GOULD, TALLMAN, NELSON